1  THE WESTON FIRM
2  GREGORY S. WESTON (239944)
   JACK FITZGERALD (257370)
3  888 Turquoise Street
4  San Diego, CA  92109
   Telephone:  858 488 1672
5  Fax:       480 247 4553
6  greg@westonfirm.com
   jack@westonfirm.com
7
8  BECK & LEE BUSINESS TRIAL LAWYERS
   JARED H. BECK (233743)
9  ELIZABETH LEE BECK (233742)
10 Courthouse Plaza Building
   28 West Flagler Street, Suite 555
11 Miami, FL 33130
12 Phone: 305 789 0072
   Fax: 786 664 3334
13 jared@beckandlee.com
14 elizabeth@beckandlee.com

15 Counsel for Plaintiffs and the Proposed Class

16

17              UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19 JENNIFER RED and REBECCA          Case No:  **CV10-01025 DMG(MANX)**
   YUMUL, on Behalf of Themselves and
20 All Others Similarly Situated,     CLASS ACTION

21
                        Plaintiffs,   **COMPLAINT FOR VIOLATIONS**
22                                     **OF UNFAIR COMPETITION**
         v.                            **LAW, FALSE ADVERTISING**
23                                     **LAW, AND CONSUMER LEGAL**
24 THE KROGER COMPANY,                 **REMEDIES ACT**

25
                        Defendant.    DEMAND FOR JURY TRIAL
26

27

28

Plaintiffs Jennifer Red and Rebecca Yumul ("Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, by and through undersigned counsel, hereby sue Defendant The Kroger Company ("Kroger") and, upon information and belief and investigation of counsel, allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction under 28 U.S.C. §1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs reside in and suffered injuries as a result of Kroger's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, and Kroger (1) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets of this district through the promotion, marketing, distribution, and sale of its products in this district; (2) resides in this district; and (3) is subject to personal jurisdiction in this district.

## INTRODUCTION

3.     Plaintiffs Jennifer Red and Rebecca Yumul repeatedly purchased Kroger products containing artificial *trans* fat in California during the class period defined herein.

4.     Artificial *trans* fat raises the risk of coronary heart disease more than any known nutritive product.

5.     Artificial *trans* fat causes heart disease by raising the level of "bad" LDL blood cholesterol and lowering the level of "good" HDL blood cholesterol.

6.     Artificial *trans* fat also causes cancer.

7.     Artificial *trans* fat also causes type-2 diabetes.

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

8.     Kroger ChurnGold Margarine, Kroger Soft Margarine (the "Kroger Margarine Products"), and Kroger Value Graham Crackers (together with the Kroger Margarine Products, the "Kroger Products") contain artificial *trans* fat.

9.     Kroger nevertheless markets the Kroger Products as free of *trans* fat, which is false.

10.     Kroger further markets its trans fat-laden Kroger Margarines as "A Cholesterol Free Product" which, while possibly true, is highly misleading because, unlike the artificial *trans* fat in the Kroger Margarines—which raise LDL cholesterol levels—direct consumption of dietary cholesterol is not linked to disease.

11.     Plaintiffs seek an order that compels Kroger to (1) cease marketing and selling the Kroger Products using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Kroger was unjustly enriched, and (4) destroy all misleading and deceptive materials and products.

## PARTIES

14.     Defendant The Kroger Company is an Ohio corporation with its principal place of business in California and is the producer and manufacturer of the Kroger Products.

15.     Plaintiffs Jennifer Red and Rebecca Yumul are residents of California who repeatedly purchased the Kroger Products for their own use in various California stores during the class period, defined below.

## SUMMARY OF THE STRONG EVIDENCE OF HEALTH DANGERS OF ARTIFICIAL TRANS FAT

**Artificial *trans* fat is a manufactured food product whose basic chemical structure is different from natural fat molecules.**

16.     *Trans* fat is naturally found in trace amounts in foods derived from

1 ruminant animals, primarily in cow's milk and red meat.[1] It is also found in small

2 quantities in human breast milk.

3      17.    Also known as vaccenic acid, natural *trans* fat has never been linked

4 to any negative health effect in human beings and is chemically different than

5 artificial *trans* fat.

6      18.    Initial studies on rats indicate that consumption of vaccenic acid is

7 beneficial to health.[2]

8      19.    Artificial *trans* fat, by contrast, is manufactured in an industrial

9 process called hydrogenation, in which hydrogen atoms are added to normal

10 vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in

11 the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel.[3]

12      20.    The resulting product is known as partially hydrogenated vegetable oil

13 ("PHVO"), which is a major ingredient in the Kroger Margarine products, and is

14 the main source of *trans* fat in the American diet.[4]

15      21.    PHVO was invented in 1901 and patented in 1902 by German chemist

16 Wilhelm Normann. PHVO molecules chemically differ from the natural fat

17 molecules in other food products, as shown in the illustrations that follow.

18      22.    Natural fat, except the trace amounts of natural *trans* fat from

19 ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds

20 ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen

21

22 [1] Dariush Mozaffarian *et al., Trans Fatty Acids and Cardiovascular Disease*, 354 New Eng. J. Med. 1601, 1608 (2008).

23 [2] Ye Wang *et al., Trans-11 Vaccenic Acid Dietary Supplementation Induces*

24 *Hypolipidemic Effects on JCR:LA-cp Rats*, 138 J. Nutrition 2117 (November 2008).

25 [3] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of*

26 *Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

27 [4] *See* Mozaffarian, 354 New Eng. J. Med. at 1608.

28

atoms on the same side on the carbon chain ("*cis* fat"). *Trans* fat, however, has double bonds on opposite sides of its carbon chain.






COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT



23.    PHVO was initially a "wonder product" attractive to the packaged food industry because it combines the low cost of unsaturated *cis* fat with the flexibility and long shelf life of saturated fat. Like *cis* fat, PHVO is manufactured from lower-cost legumes,[5] while saturated fat is derived from relatively expensive animal and tropical plant sources.[6]

24.    Like natural saturated fat, PHVO has a long shelf life, physical solidity, and flavor stability. The industrial process that adds hydrogen ions to normal vegetable oil improves food texture and permits food products to withstand heavy mechanical processing and high temperatures.[7] Given its versatility, PHVO

---

[5] e.g., corn oil, soybean oil, peanut oil

[6] e.g., butter, cream, tallow, coconut oil

[7] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qatrans2.html#fn.

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

was recently used in 40 percent of processed packaged foods.[8]

25.    Artificial *trans* fat does not exist in nature, and the human body has not evolved to digest it. The same unusual and unnatural chemical structure that gives artificial *trans* fat properties attractive from an industrial perspective makes it highly toxic to human health.

***Trans* fat causes cardiovascular disease, type 2 diabetes, and cancer.**

- **Heart Disease**

26.    In a joint Dietary Guidelines Advisory Committee Report, the U.S. Department of Health and Human Services and the U.S. Department of Agriculture recognized **"[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."**[9]

27.    Food products with *trans* fat harm the heart by "rais[ing] the concentration of the most dangerous form of serum cholesterol (LDL cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[10]

28.    The American Heart Association notes **"trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."**[11]

29.    After an extensive evaluation of the scientific literature on the *trans* fat/Coronary Heart Disease ("CHD") connection, the FDA concluded:

---

[8] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's **Trans** Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

[9] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[10] *Id.*

[11] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

[B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[12]

30.   *Trans* fat raises the risk of CHD more than any other known nutritive product.[13]

31.   Removing 2% of daily calories from *trans* fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,0000 premature deaths annually."[14]

32.   A study on the impact of *trans* fatty acids on heart health provides evidence that:

[E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[15]

33.   Since "the adverse effect of trans fatty acids is stronger than that of saturated fatty acids," saturated fat consumption would need to be reduced by 10

---

[12] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling.

[13] Mozaffarian, 354 New Eng. J. Med. at 1603.

[14] Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

[15] W.C. Willett *et al.*, *Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health  722, 723 (1994).

7

percent of caloric intake to have the same impact.[16]

34.    "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[17]

35.    By raising LDL levels and lowering HDL levels, *trans* fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

36.    After conducting a crossover diet trial, Danish researchers determined that healthy men and women who maintained a high-*trans* fat diet had 21 percent lower protective HDL levels and 29 percent lower flow-mediated vasodilation ("FMD") than those on a high-saturated fat diet. Since FMD measures the percent increase between the diameter of the artery at ordinary and at maximum dilation, low FMD is "a risk marker of coronary heart disease.[18]

37.    Australian researchers observed that heart attack patients possess elevated amounts of *trans* fat in their adipose tissue, strongly linking heart disease with long-term consumption of *trans* fat.[19]

38.    By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by *trans* fat intake, another study published in the American Heart Association's *Circulation* found that the largest consumers of *trans* fat have

---

[16] Mozaffarian, 354 New Eng. J. Med. at 1609.

[17] *See* Mozaffarian, 354 New Eng. J. Med. at 1611.

[18] Nicole M. De Roos *et al.*, *Replacement of Dietary Saturated Fatty Acids by Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial Function in Healthy Men and Women*, 21 Am. Heart Assoc. 1233,  1233-37 (2001).

[19] Peter M. Clifton *et al.*, *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*. 134 J. of Nutrition 874, 874-79 (2004).

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1    three times the risk of suffering primary cardiac arrest, even after controlling for a

2    variety of medical and lifestyle risk factors.[20]

3    • **Diabetes**

4        39.    Artificial *trans* fat causes type 2 diabetes.[21]

5        40.    A 14-year study of 84,204 women found that for every 2 percent

6    increase in energy intake from *trans* fat, the relative risk of type 2 diabetes was

7    1.39. In other words, each 2 percent of calories from artificial *trans* fat increases

8    the risk of type 2 diabetes by 39 percent.[22]

9    • **Cancer**

10       41.    *Trans* fat is a known carcinogen shown to cause breast, prostate, and

11   colorectal cancer.

12       42.    A 13-year study of 19,934 French women showed 75 percent more

13   women contracted breast cancer in the highest quintile of *trans* fat consumption

14   than did those in the lowest.[23]

15       43.    In a 25-year study of 14,916 U.S. physicians, the doctors in the

16   highest quintile of *trans* fat intake had over a 100% greater risk of developing

17   prostate cancer than the doctors in the lowest quintile.[24]

18       44.    A study of 1,012 American males observing *trans* fat intake and the

19

20   [20] Rozenn N. Lemaitre *et al.*, *Cell Membrane Trans-Fatty Acids and the Risk of*
21   *Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

22   [21] Am. Heart Ass'n., *Trans Fat Overview*.

     [22] Jorge Salmeron *et al.*, *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*,
23   73 Am. J. of Clinical Nutrition 1019, 1023 (2001).

24   [23] Véronique Chajès *et al.*, *Association between Serum Trans-Monounsaturated*
25   *Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. of
     Epidemiology 1312, 1316 (2008).

26   [24] Jorge Chavarro *et al.*, *A Prospective Study of Blood Trans Fatty Acid Levels and*
27   *Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

28

1  risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-

2  fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58,"

3  meaning those in the highest quartile are 58% more likely to contract prostate

4  cancer than those in the lowest.[25]

5      45.    A 600-person study found an 86 percent greater risk of colorectal

6  cancer in the highest *trans* fat consumption quartile.[26]

7      46.    A 2,910-person study found "*trans*-monounsaturated fatty acids . . .

8  were dose-dependently associated with colorectal cancer risk," which showed "the

9  importance of type of fat in the etiology and prevention of colorectal cancer."[27]

10      47.    The serious health conditions caused by *trans* fat consumption only

11  occur from artificial *trans* fat, not the trace natural *trans* fat found in ruminant

12  sources:

13      Of four prospective studies evaluating the relation between the intake
14      of trans fatty acids from ruminants and the risk of CHD, none
        identified a significant positive association, whereas three identified
15      nonsignificant trends toward an inverse association. . . . [T]he sum of
16      the current evidence suggests that the public health implications of
        consuming trans fats from ruminant products are relatively limited.[28]
17

18  **The grave, concrete risks of artificial *trans* fat consumption far outweigh any**

19  **conceivable benefits of Kroger's conduct.**

20      48.    There is no health benefit to artificial *trans* fat consumption and "no

21  ─────────────────────

22  [25] Xin Liu *et al.*, *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232
23  (2007).

24  [26] L.C. Vinikoor *et al.*, *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

25  [27] Evropi Theodoratou *et al.*, *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. of Epidemiology 181 (2007).

26  [28] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

27

28

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

1  safe level" of artificial *trans* fat intake. [29]

2      49.    According to the established consensus of the scientific community,

3  consumers should keep their consumption of *trans* fat "as low as possible."[30]

4      50.    As Dr. Dariush Mozaffarian notes in the New England Journal of

5  Medicine:

6      [F]rom a nutritional standpoint, the consumption trans fatty acids
       results in considerable potential harm but no apparent benefit. . . .

7      Thus, complete or near-complete avoidance of industrially produced

8      trans fat—a consumption of less than 0.5 percent of the total energy

9      intake—may be necessary to avoid adverse effects and would be

10     prudent to minimize health risks.[31]

11 ***Trans* fat is so inherently dangerous that it is being banned in an increasing**

12 **number of American states and European countries.**

13      51.    In 2008, California became the first state to ban all restaurant food

14 with  artificial  *trans*  fat,  a  law  affecting  approximately  88,000  eating

15 establishments. *Trans* fats are now banned in restaurants as of January 1, 2010.

16      52.    New York City banned all *trans* fat in its 20,000 food establishments

17 in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and

18 Montgomery County, Maryland.

19      53.    A 2004 Danish law restricted all foods to under 2 percent of calories

20

21

22 ―――――――――――――
[29] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,

23 Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids

24 (2005).

25 [30] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy,
   Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids 424

26 (2005).

27 [31] Mozaffarian, 354 New Eng. J. Med. at 1609.

28

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

1   from *trans* fat. Switzerland made the same restriction in 2008.[32]

2   54.   After conducting a surveillance study of Denmark's *trans* fat ban,

3   researchers concluded the change "did not appreciably affect the quality, cost or

4   availability of food" and did not have "any noticeable effect for the consumers."[33]

5   55.   In 2006, a *trans* fat task force co-chaired by Health Canada and the

6   Heart and Stroke Foundation of Canada recommended capping *trans* fat content at

7   2 percent of calories for tub margarines and spreads and 5 percent for all other

8   foods. On September 30, 2009, British Columbia became the first province to

9   impose these rules on all restaurants, schools, hospitals, and special events.[34]

10   **Direct consumption of dietary cholesterol is unrelated to heart disease.**

11   56.   By raising bad cholesterol and lowering good cholesterol levels, *trans*

12   fat raises the risk of CHD more than any other known nutritive product.[35] By

13   contrast, dietary cholesterol intake is unrelated to CHD risk.[36]

14   57.   Kroger, however, markets the Kroger Margarines as "A Cholesterol

15

16   [32] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent

17   (UK), June 10, 2008.

18   [33] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of Industrially

19   Produced Trans Fat in Popular Fast Food, 354 New Eng. J. Med. 1650, 1652
     (2006).

20   [34] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy

21   Living and Sport Press Release (2009), *available at*

22   http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-
     000315.htm.

23   [35] Mozaffarian, 354 New Eng. J. Med. at 1602.

24   [36] Katja L. Esrey *et al., Relationship Between Dietary Intake and Coronary Heart
     Disease Mortality: Lipid Research Clinics Prevalence Follow-up Study,* 49 J. Clin.

25   Epidemiol 2:211, 212-216 (1996). *See also* Barbara Millen Posner *et al., Dietary
     Lipid Predictors of Coronary Heart Disease in Men: The Framingham Study,* 151

26   Arch Intern Med 1181, 1184-86 (June 1991).

27

28

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

1  Free Food," implying a connection between dietary cholesterol and disease where
2  none exists, thereby misleading consumers who purchase the Kroger Margarines
3  believing they are healthy when the Kroger Margarines in fact contain substantial
4  and dangerous levels of artificial *trans* fat.

5      58.    Kroger's "A Cholesterol Free Food" claims further insinuate that
6  consumption of the Kroger Margarines is useful for the maintenance of healthy
7  serum cholesterol levels when in fact the consumption of the *trans*-fat laden
8  Kroger Margarines negatively impacts serum cholesterol levels. Kroger thus
9  deceives consumers concerned about cardiovascular health into purchasing
10 products harmful to their hearts.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13

# SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS, AND DECEPTIVE ACTS

**Kroger ChurnGold Margarine**



COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





15

59. **Misleading cholesterol claim:**   Kroger prominently labels Kroger ChurnGold Margarine "a Cholesterol Free Food."

60.   As described in detail above, the risk of CHD is not related to the consumption of dietary cholesterol, but to the serum levels of LDL cholesterol relative to HDL cholesterol. Kroger's ChurnGold Margarine contains substantial and dangerous levels of artificial *trans* fat, which increases LDL cholesterol and decreases HDL cholesterol levels. Kroger capitalizes on a common misperception of the relative importance of dietary cholesterol to fool consumers who are concerned about heart health, leading them to purchasing a product that increases their LDL serum cholesterol, lowers their HDL serum cholesterol, and raises their risk for heart disease, diabetes, and cancer.

61. **Misleading *trans* fat claim:**   Kroger prominently labels Kroger ChurnGold Margarine "0g TRANS FAT PER SERVING."

62.   Kroger ChurnGold Margarine contains various hydrogenated oils. As described in detail above, the process of hydrogenating oils creates artificial *trans* fats. Thus, Kroger ChurnGold Margarine contains artificial *trans* fats and Kroger's claim of "0g TRANS FAT PER SERVING" is literally false.

1 **<u>Kroger Soft Margarine</u>**



COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

1
2
3
4
5
6
7
8
9
10
11



12   63.   **Misleading cholesterol claim:**   Kroger prominently labels Kroger

13   Soft Margarine "A Cholesterol Free Food."

14   64.   As described in detail above, the risk of CDH is not related to the

15   consumption of dietary cholesterol, but to the serum levels of LDL cholesterol

16   relative to HDL cholesterol. Kroger's Soft Margarine contains substantial and

17   dangerous levels of artificial *trans* fat, which increases LDL cholesterol and

18   decreases HDL cholesterol levels. Kroger capitalizes on a common misperception

19   of the relative importance of dietary cholesterol to fool consumers who are

20   concerned about heart health, leading them to purchasing a product that increases

21   their LDL serum cholesterol, lowers their HDL serum cholesterol, and raises their

22   risk for heart disease, diabetes, and cancer.

23
24
25
26
27
28

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

**<u>Kroger Value Graham Crackers</u>**



COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

65.   **Misleading *trans* fat claim:**  Kroger prominently labels Kroger Value Graham Crackers "0g TRANS FAT PER SERVING" and "0g DE GRASA TRANS POR PORCION" (the Spanish equivalent).

66.   Kroger Value Graham Crackers contains partially hydrogenated oil. As described in detail above, the process of hydrogenating oils creates artificial *trans* fats. Thus, Kroger ChurnGold Margarine contains artificial *trans* fats and Kroger's claim of "0g TRANS FAT PER SERVING" is literally false.

## CLASS ACTION ALLEGATIONS

67.   Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") in accordance with Rule 23 of the Federal Rules of Civil Procedure.

68.   The Class is defined as:

> All persons (excluding officers, directors, and employees of Kroger) who purchased, on or after January 1, 2000, Kroger ChurnGold Margarine, Kroger Soft Margarine, and/or Kroger Graham Crackers in the United States for their own use rather than resale or distribution.

69.   Questions of law and fact common to Plaintiffs and the Class include:

a.   Whether Kroger contributed to, committed, and/or is responsible for the conduct alleged herein;

b.   Whether Kroger's conduct constitutes the violations of law alleged herein;

c.   Whether Kroger acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

d.   Whether Class members are entitled to compensatory, injunctive, and other equitable relief.

70.   By purchasing and/or using the Kroger Products, all Class members were subjected to the same wrongful conduct.

71.   Absent Kroger's deceptive claims and fraudulent omissions, Plaintiffs

1    and class members would not have purchased the Kroger Products.

2         72.    Plaintiffs' claims are typical of the Class's claims. Plaintiffs will fairly

3    and adequately protect the interests of the Class, have no interests that are

4    incompatible with the interests of the Class, and have retained counsel competent

5    and experienced in class litigation.

6         73.    The Class is sufficiently numerous, as it includes at least hundreds of

7    thousands of individuals who purchased the Kroger Products throughout the

8    United States during the class period.

9         74.    Class representation is superior to other options for the resolution of

10   the controversy. The relief sought for each Class member is small. Absent the

11   availability of class action procedures, it would be infeasible for Class members to

12   redress the wrongs done to them.

13        75.    Kroger has acted on grounds applicable to the Class, thereby making

14   appropriate final injunctive relief or declaratory relief concerning the Class as a

15   whole.

16        76.    Questions of law and fact common to the Class predominate over any

17   questions affecting only individual members.

18   **Kroger fraudulently concealed the health hazards of consuming its products.**

19        77.    Any applicable statute of limitations is tolled by Kroger's

20   affirmatively concealing and publicly misrepresenting its violations of law as

21   described herein. A reasonable consumer would have relied on the deceptive and

22   false claims made on the packaging of the Kroger Products, and through the

23   exercise of reasonable diligence would not have discovered the violations alleged

24   herein because Kroger actively and purposefully concealed the truth regarding its

25   products.

26

27

28

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

**FIRST CAUSE OF ACTION**

**Violations of the California Unfair Competition Law,
Bus. & Prof. Code § 17200 *et seq.*,
and the Common Law of Unfair Competition**

78.　Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

79.　Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

80.　The acts, omissions, misrepresentations, practices, and non-disclosures of Kroger as alleged herein constitute "unlawful" business acts and practices in that Kroger's conduct violates the False Advertising Law and the Consumer Legal Remedies Act.

81.　The acts, omissions, misrepresentations, practices, and non-disclosures of Kroger as alleged herein constitute "unfair" business acts and practices in that Kroger's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Kroger's conduct outweighs any conceivable benefit of such conduct.

82.　The acts, omissions, misrepresentations, practices, and non-disclosures of Kroger as alleged herein constitute "fraudulent" business acts and practices in that Kroger's conduct has a tendency to deceive the Class and the general public.

83.　By violating the California Unfair Competition Law, Kroger also violated the common law of unfair competition.

84.　In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Kroger from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

85.     Plaintiffs further seek an order for the disgorgement and restitution of all monies from the sale of the Kroger Products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

### SECOND CAUSE OF ACTION

**Violations of the California False Advertising Law,
Bus. & Prof. Code § 17500 *et seq.***

86.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

87.     In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Kroger Products without the knowledge that the toxic artificial *trans* fats contained within could negatively affect cholesterol levels.

88.     Kroger knew and reasonably should have known that the labels on the Kroger Products were untrue and/or misleading.

89.     As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kroger was unjustly enriched.

### THIRD CAUSE OF ACTION

**Violations of the Consumer Legal Remedies Act,
Civ. Code § 1750 *et seq.***

90.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

91.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

92.     Kroger's policies, acts, and practices were designed to, and did, result

24

in the purchase and use of the Kroger Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

      a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

      b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

      c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised.

      d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

93.    As a result, Plaintiffs and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

94.    In compliance with Civ. Code § 1782, Plaintiffs have sent written notice to Kroger of their claims.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment and relief against Defendant as follows:

A.    Declaring this action to be a proper class action.

B.    An Order enjoining Kroger from marketing the Kroger Margarines as "A Cholesterol Free Food" so long as they contain artificial *trans* fat.

C.    An Order compelling Kroger to conduct a corrective advertising campaign to inform the public that its products contain amounts of artificial *trans* fat which are unsafe at consumers' actual consumption levels.

D.    An Order requiring Kroger to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice.

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1     E.     An Order compelling Kroger to destroy all misleading and deceptive

2  advertising materials and products.

3     F.     An Order requiring Kroger to pay restitution to restore all funds

4  acquired by means of any act or practice declared by this Court to be an unlawful,

5  unfair, or fraudulent business act or practice, untrue or misleading advertising, or a

6  violation of the CLRA, plus pre-and post-judgment interest thereon;

7     G.    Costs, expenses, and reasonable attorneys' fees;

8     H.    Any other and further relief the Court deems necessary, just, or

9  proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: February 10, 2010

Respectfully Submitted,

THE WESTON FIRM
GREGORY S. WESTON
JACK FITZGERALD
888 Turquoise Street
San Diego, CA 92109
Telephone:  858 488 1672
Facsimile:  480 247 4553

BECK & LEE BUSINESS TRIAL
LAWYERS
JARED H. BECK
ELIZABETH LEE BECK
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:  305 789 0072
Facsimile:  786 664 3334

Counsel for Plaintiffs

COMPLAINT FOR VIOLATIONS OF UNFAIR COMPETITION LAW, FALSE ADVERTISING LAW, AND
CONSUMER LEGAL REMEDIES ACT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV10- 1025 DMG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
The Kroger Co.
CSC - Lawyers Incorporating Service
2730 Gateway Oaks Drive Suite 100
Sacramento, CA 95833

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER RED and REBECCA YUMUL, on Behalf of Themselves and All Others Similarly Situated, <br><br> PLAINTIFF(S) <br><br> v. <br><br> THE KROGER COMPANY, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV10-01025 DMG(MANX)** <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): The Kroger Company

A lawsuit has been filed against you.

     Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Gregory S. Weston _____, whose address is The Weston Firm, 888 Turquoise Street, San Diego, CA 92109 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

FEB 11 2010

Dated: _____

By: _____

NANCY CASTRO

Deputy Clerk

*(Seal of the Court)*   1144

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br><br>JENNIFER RED and REBECCA YUMUL, on Behalf of Themselves and All Others Similarly Situated, | DEFENDANTS<br><br>THE KROGER COMPANY |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>The Weston Firm, Gregory S. Weston, 888 Turquoise Street, San Diego, CA 92109, (858) 488-1672;   Beck and Lee Business Trial Lawyers, Jared H. Beck, 28 West Flagler Street Suite 555, Miami, FL 33130, (305) 789-0072 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

False Advertising under the Lanham Act, 15 U.S.C. § 1125

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | **IMMIGRATION** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus- Alien Detainee | | |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

| FOR OFFICE ONLY: | Case Number: | **CV10-01025 DMG(MANX)** | |
|---|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV10-00927 MMM (AJWx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
　　☐　Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
　　☐　Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Ohio |

(c)　List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _Greg Weston_　　　　Date _2-10-10_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |